Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1470 | **DATE** | 8/30/2001 |
| **CASE TITLE** | Antonio Tan vs. City of Chicago, Jardine Water Purification Plant | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant City of Chicago's motion to strike [24-1] is granted in part. Accordingly, defendant City of Chicago's motion for summary judgment [18-1] is granted in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 0 4 2001 date docketed | 31 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 31 PM 12: 54 | 8/31/2001 date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTONIO TAN,  )
  )
      Plaintiff, ) Case No. 00 C 1470
  )
v. ) Magistrate Judge
  ) Martin C. Ashman
CITY OF CHICAGO, JARDINE )
WATER PURIFICATION PLANT, )
  )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Antonio Tan, filed suit against Defendant, the City of Chicago, alleging discrimination in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"), and retaliation in violation of 42 U.S.C. § 2000e-3(a). The discrimination claims emanated from a suspension Tan received on August 5, 1999, and the retaliation claim arose out of reprimands Tan received after he filed a charge with the EEOC.

Presently before this Court is Chicago's Motion for Summary Judgment and Chicago's Motion to Strike. With regard to the former, Chicago argues that Tan has failed to raise an inference of discrimination or retaliation, and therefore Chicago is entitled to judgment as a matter of law. As to the latter, Chicago contends that parts of Tan's Local Rule 56.1(b)(3) materials should be stricken for noncompliance with Local Rule 56.1(b)(3). For the following reasons, this Court grants Chicago's Motion to Strike in part and Chicago's Motion for Summary Judgment in its entirety.[1]

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. See 28 U.S.C. § 636(c); Local R. 73.1(b).



## I. Background

Tan, a Chinese male, has worked for the City of Chicago at the Jardine Water Purification Plant since 1979. During the relevant time period, Tan was between seventy-five and seventy-six years old and held the position of Filtration Engineer III.

As a Filtration Engineer III, Tan had various duties relevant to assuring proper levels of chemicals such as fluoride and chlorine in the city's water supply and to assuring proper filtration of that water supply. One of those duties was to periodically review the written results of chemists' water samples and to investigate further if the results indicated abnormal levels of fluoride. Too much fluoride in drinking water could be a health hazard, and too little fluoride in drinking water could weaken the city's residents' teeth.

On August 5, 1999, Tan's supervisor, Filtration Engineer V Noormohamed Mansuri, issued Tan a one-day suspension without pay because, based on Jardine records, on July 14, 1999, Tan had acknowledged that fluoride residuals were ten times higher than the prescribed limits but had failed to investigate and take action to help correct the problem.[2] Tan believed that he did nothing wrong. Consequently, Tan filed a charge of discrimination with the Illinois Department of Human Rights and the EEOC on August 23, 1999, claiming that the real reasons for his suspension were his age and national origin.

About four months later, another one of Tan's supervisors, Assistant Chief Filtration Engineer Anthony Sowa, issued Tan a written reprimand.[3] The reprimand alleged that Tan had

---

[2] It appears that Tan also received an oral reprimand around this time. However, the facts regarding this reprimand do not appear in the record. (See Pl.'s Resp. Def.'s Mot. Summ. J. at 3.)

[3] At the time, Sowa was aware of Tan's EEOC charge.

failed to backwash the filters on November 28, 1999, at the proper time. Apparently, the failure to backwash filters, as needed, could cause breakthrough or penetration of the material meant to be filtered and could cause the filters to crack.[4]

On December 27, 1999, Mansuri issued Tan a written reprimand alleging that Tan had overfed chlorine into Jardine's intake basin on October 21–22, 1999, which made chlorine levels in the water rise above the prescribed limits.[5] (Too much chlorine in the drinking water could be a health risk and could give the water a chlorine odor.) Tan denied that he overfed the chlorine on either day, but Tan admitted that the chlorine level was high on at least one of the two days. (Pl.'s Resp. Def.'s 56.1(a)(3) Statement of Material Facts ¶ 13.)

Other Filtration Engineer III's have also received one-day suspensions and written reprimands for similar offenses. On June 8, 1998, Mansuri issued a written reprimand to Shaji Edat for failing to maintain required minimum reservoir elevations. On December 13, 1999, Sowa issued Benjamin Lising a written reprimand for failing to backwash filters on November 28, 1999—the same day that Tan allegedly failed to backwash the filters. Lastly, on May 10, 2000, Mansuri issued one-day suspensions to Lising and Sayed Abedin because they both failed to take action to prevent abnormal chlorine residuals in the water supply.

---

[4] Tan agrees that backwashing the filters was one of his duties, but disputes that he failed to backwash the filters on November 28, 1999. (Pl.'s Resp. Def.'s 56.1(a)(3) Statement of Material Facts ¶ 8.)

[5] It is contested whether Mansuri was aware of Tan's EEOC charge when Mansuri issued the reprimand. In an affidavit attached to Chicago's Motion for Summary Judgment, Mansuri stated that he was not aware of the EEOC filing until, at the earliest, January 2000. (Mansuri Aff. ¶ 10.) But at his deposition, Mansuri testified that he could not remember when he became aware of the EEOC filing. (Mansuri Dep. at 60-61.)

On March 7, 2000, the EEOC issued Tan a notice of right to sue. Two days later, Tan filed a complaint in federal court. Tan's complaint contained two claims: national origin discrimination under Title VII and age discrimination under ADEA. An amended complaint, filed by Tan on September 28, 2000, added a claim of retaliation under § 2000e-3(a). Altogether, Tan claimed that Mansuri issued the one-day suspension in August 1999 because of Tan's national origin and age, and that Mansuri and Sowa issued the December reprimands because Tan filed the EEOC charge.

Upon the close of discovery, Chicago filed the instant Motion for Summary Judgment, which attacks all of Tan's claims. Shortly after receiving Tan's response to Chicago's Motion for Summary Judgment, Chicago filed the instant Motion to Strike.

## II. Discussion

### A. Chicago's Motion to Strike

As a preliminary matter, this Court decides Chicago's Motion to Strike. Chicago argues that certain paragraphs of Tan's Local Rule 56.1(b)(3)(A) Response and Local Rule 56.1(b)(3)(B) Statement of Additional Facts should be stricken because they contain no citations, are not based on personal knowledge, or are conclusory.

Local Rule 56.1(a)(3) states that a party moving for summary judgment shall file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgement as a matter of law." The party opposing the motion, here Tan, must respond to each of the moving party's facts and, in the case of any disagreement, include "specific references to the affidavits, parts of the record, and other supporting materials

relied upon." Local R. 56.1(b)(3)(A). As Local Rule 56.1(b)(3)(B) warns: "[a]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

In a sense reversing their roles, Local Rule 56.1(b)(3)(B) permits the opposing party to file a statement of additional facts that require the denial of summary judgment. Similar to the moving party's Local Rule 56.1(a)(3) statement, the facts contained in the Local Rule 56.1(b)(3)(B) statement must be supported with specific citations to the material relied upon. *Id.* If citations are missing, the facts may be ignored.

Courts can enforce Local Rule 56.1 to the hilt. It is within the court's discretion to strictly apply Local Rule 56.1 or overlook transgressions of the rule. *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000); *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992). Conceivably the complexity of the case, the amount of evidence submitted, and the number of transgressions of the rule may effect this decision. A good reason for noncompliance with the rule, whatever that may be, would appear to be a prerequisite for leniency.

In this case, Tan fails to include a citation to the record in nine of nineteen paragraphs in his Local Rule 56.1(b)(3)(A) response—all nine of the paragraphs contain denials. (To Tan's credit, one of his denials contains a citation to the record.) Even worse, Tan's Local Rule 56.1(b)(3)(B) statement—which incorporates Tan's affidavit[6]—fails to include a single citation to

---

[6] Tan's affidavit was originally defective in its own right due to its lacking a signature. On July 10, 2001, this Court granted Tan leave to submit an affidavit in compliance with Federal Rule of Civil Procedure 56(e). Since then Tan has submitted such a signed and sworn affidavit.

the record. That leaves us guessing as to what materials Tan relied upon to make his assertions. Tan does not dispute this, nor does he ask for leave to supplement or amend his Local Rule 56.1(b) materials. Instead, Tan only asks us to overlook his transgressions of Local Rule 56.1(b).

In support of his request, Tan cites to two cases, *Platinum Technology, Inc. v. Federal Insurance Co.*, No. 99 C 7378, 2001 WL 109814 (N.D. Ill. Feb. 2, 2001), and *Madonia v. Mavo Leasing, Inc.*, No. 98 C 601, 2000 WL 420743 (N.D. Ill. Apr. 13, 2000), but he fails to tell us the reason for his noncompliance. The fact that Tan has not given us a reason hurts his position, and, as Chicago points out, *Platinum Technology and Madonia* undermine it as well.

In *Platinum Technology*, the parties presented legal arguments rather than facts in their Local Rule 56.1 materials. The court completely disregarded the legal arguments but did not strike any of the facts. *Platinum Tech., Inc.*, 2001 WL 109814, at *3. In *Madonia*, parts of the nonmoving party's Local Rule 56.1(b)(3)(A) response and Local Rule 56.1(b)(3)(B) statement lacked citations to the record. The court completely disregarded those parts. *Madonia*, 2000 WL 420743, at *8-9.

Completely disregarding Tan's assertions that do not comply with Local Rule 56.1(b)(3) may seem harsh, but it is called for here. *See Rosemary B. v. Bd. of Educ. of Cmty. High Sch.*, 52 F.3d 156, 159 (7th Cir. 1995) (affirming the district court's striking of the plaintiff's Local Rule 56.1(b)(3)(A) response and Local Rule 56.1(b)(3)(B) statement because both lacked citations to the record). There is a good deal of evidence in the record and Tan has not made even a colorable attempt to comply with Local Rule 56.1(b). It is not our job to scour about and figure

out which of Tan's assertions are based on evidence and which are not.[7] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, Chicago's Motion to Strike as per paragraphs 4-5, 7-8, 10-13 and 19 of Tan's Local Rule 56.1(b)(3)(A) response and paragraphs 2-3 and 6-7 of Tan's Local Rule 56.1(b)(3)(B) statement is granted.

However, because Chicago would be entitled to summary judgment even if this Court had not granted Chicago's Motion to Strike, we will include all of the stricken material in our discussion of Chicago's Motion for Summary Judgment.

### B. Chicago's Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact, and therefore, the moving party is entitled to judgment as a matter of law. *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001); Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

---

[7] Without citations, many of Tan's statements appear conclusory or not based on personal knowledge. For instance, in paragraph nineteen of Tan's Local Rule 56.1(b)(3)(A) response, Tan "dispute[s] Defendant's claim that neither national origin nor age had an impact on Sowa's decision to issue the written reprimand on December 15, 1999." (Pl.'s Resp. Def.'s 56.1(a)(3) Statement of Material Facts ¶ 19.) If that were the case, the assertions must be stricken. *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) (finding that conclusory statements in summary judgment affidavits may be stricken); *Allen v. CITGO Petroleum Corp.*, No. 99 C 3984, 2000 WL 1810015, at *8 (N.D. Ill. Dec. 11, 2000) ("Plaintiff's general assertions in his affidavit, without evidence of actual personal knowledge, will not be sufficient to show that other employees were treated more favorably.").

*Catrett*, 477 U.S. 317, 323 (1986). This may be accomplished by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

Assuming the moving party meets its burden, the nonmoving party must come forward with sufficient evidence to support each essential element of her case. *Id.* at 323–25. Reliance on mere allegations or denials in the pleadings is not enough; instead, evidence in the form of affidavits, depositions, admissions, and interrogatories must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c).

In determining whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party. *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999). Additionally, all reasonable inferences are drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

2. Tan's Title VII Claim

Tan does not attempt to prove his Title VII claim of discrimination by direct evidence but rather he relies on indirect evidence. To establish a prima facie case of discrimination under Title VII using the indirect method, a plaintiff must demonstrate (1) that he was a member of a protected class, (2) that he performed his job satisfactorily, (3) that he suffered an adverse employment action, and (4) that the employer treated other similarly situated employees outside the protected class more favorably. *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1000-01 (7th Cir. 2000).

It is undisputed that Tan, of Chinese descent, is a member of a protected class. Whether Tan is able to show that he suffered an adverse employment action is a close call. An adverse

employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In contrast, minor or trivial actions that "make an employee unhappy" do not constitute adverse employment actions. *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 341 (7th Cir. 2001) (quoting *Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir. 1999)).

The question here is whether Tan's one-day suspension without pay was an adverse employment action. While it may seem to be too broad of an interpretation to consider a one-day suspension without pay a significant change in employment status as dictated by *Burlington*, the Seventh Circuit has defined "broadly" what constitutes an adverse employment action. *Silk*, 194 F.3d at 800. We know that disciplinary suspensions with a loss of pay can be adverse employment actions. *Russell*, 243 F.3d at 341-42 (five-day suspension); *Conley v. Village of Bedford Park*, 215 F.3d 703, 706, 709 (7th Cir. 2000) (nine-day suspension); *Silk*, 194 F.3d at 806 n.17 (five-day suspension). In Tan's case, it comes down to how many days and dollars need to be lost to qualify as an adverse employment action. For now, we pass on the question because, even assuming that Tan's one-day suspension constituted an adverse employment action, Tan's Title VII claim falls on other grounds.

First, in light of the evidence presented, no reasonable juror could conclude that Tan was performing his job satisfactorily during the relevant time period. Mansuri issued Tan the one-day suspension because Tan had failed to investigate and take action on July 14 after receiving information that fluoride residuals were out of range. A deposition, a chart, and an affidavit support the assertion. In response, Tan argues that the disciplinary actions stemmed

- 9 -

from discrimination and not poor work performance, but he presents no evidence to back that assertion or contradict any of Chicago's evidence. Plainly, Tan's charge of discrimination and no fault is conclusory. It is well settled that conclusory statements are insufficient to defeat a motion for summary judgment; conclusory statements do not constitute specific facts that can be used to support the elements of a claim. *Abioye*, 164 F.3d at 368.

Likewise, conclusory statements that aim to undermine the moving party's evidence—e.g., by attacking the credibility of the moving party's witnesses—are insufficient to defeat a motion for summary judgment, contrary to what Tan suggested at oral argument. *See Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997); *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994). The gist of Tan's argument on this point is that because he says that he did nothing wrong and his supervisors say that he did, one of them must be lying and that is a question for a jury.

Questions for a jury, however, are not so easily created. Tan would need to present specific evidence on the issue to create a dispute on credibility. *Futrell*, 38 F.3d at 346 ("If the evidence does not amply support a plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter of law is entirely appropriate."). The absence of any such evidence—merely Tan's conclusory "I didn't do it!" statements—means that summary judgment is entirely appropriate here.

Second, no reasonable juror could conclude that Chicago treated similarly situated employees outside of Tan's protected class more favorably. Indeed, Tan has not presented evidence of a single employee that received more favorable treatment than he did. Edat, Lising,

and Abedin were all issued suspensions for engaging in conduct similar to that which Tan engaged in. Tan does not dispute this.

Again, Tan's argument boils down to "Edat, Lising, and Abedin engaged in the conduct but I did not," with no evidentiary support. (Pl.'s Resp. Def.'s Mot. Summ. J. at 6.) This position fails for the same reasons as above: to establish an element or question a witness's credibility to defeat summary judgment requires specific factual support; conclusory allegations are not enough to survive summary judgment. Accordingly, Chicago's Motion for Summary Judgment on Tan's Title VII claim is granted on this ground, too.

### 3. Tan's ADEA Claim

Tan's ADEA claim, which is also based on purported indirect evidence of discrimination, falls for the same reasons as his Title VII claim. To succeed on an ADEA claim using the indirect method, a plaintiff must establish (1) that he was at least forty years of age (thus a member of a protected class), (2) that he performed his work to the employer's legitimate expectations, (3) that he experienced an adverse employment action, and (4) that similarly situated younger employees were treated more favorably. *Shekerjian v. Pyramid Mouldings, Inc.*, 19 F. Supp. 2d 857, 860 (N.D. Ill. 1998). At the time of his suspension, Tan was over forty years old. Here too we pass on the adverse employment action issue because Tan's ADEA claim falls on other grounds: Tan has presented no evidence to show that he performed his job satisfactorily, and Tan has presented no evidence to show that similarly situated younger employees were treated more favorably than Tan.

Briefly, since Tan relies on the same conclusory statements to survive summary judgment on his ADEA claim as he did for his Title VII claim, the reasons stated in Section II(B)(2) equally apply here.

### 4. Tan's Retaliation Claim

We find no reason for Tan's retaliation claim to go to a jury, either. Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). In other words, retaliation against employees who protest against national origin discrimination is prohibited.

As with other Title VII claims, retaliation claims can be established with indirect evidence. To prove retaliation using the indirect method, as Tan attempts to do here, a plaintiff must show (1) that he engaged in statutorily protected expression, (2) that he suffered an adverse employment action, and (3) that there is a causal link between the protected expression and the adverse employment action. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994) (quoting *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir. 1989)).

Tan has no problem satisfying the first element of his prima facie case: the EEOC charge that he filed on August 23, 1999, constituted statutorily protected expression.[8] But beyond that, Tan cannot establish a genuine issue of fact as to any of the remaining elements. In fact, Tan's

---

[8] As an aside, we note that Tan need not prove that the discrimination charges he made to the EEOC were true for his EEOC charge to constitute statutorily protected expression. *Holland*, 883 F.2d at 1314.

argument for retaliation is even weaker than his arguments for discrimination, as if that were possible.

Whether Tan suffered an adverse employment action with respect to his discrimination claims could make for an interesting debate in light of the case law. *See supra* p. 9. But, according to the same case law, whether Tan suffered an adverse employment action with respect to his retaliation claim is not even open for debate. After filing the EEOC charge, the only disciplinary actions that Tan received were written reprimands. Reprimands do not constitute adverse employment actions under Title VII. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001); *Sweeny v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998). Therefore, on this element alone, Tan's retaliation claim must fall.

Even if we overlook this flaw in Tan's claim, another flaw appears at the next step: Tan has failed to establish a causal link between the filing of his EEOC charge and the written reprimands he received. To establish a causal link, Tan relies on the fact that his supervisors were aware of the EEOC charge when they reprimanded him.[9] This argument is not nearly robust enough to withstand summary judgment. Admittedly, suspicious timing goes toward establishing a causal link. But we have doubts as to whether the timing between Tan's August EEOC charge and either Sowa's December reprimand or Mansuri's December reprimand is suspicious. *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (holding that a four-month gap is too large to create an inference of retaliation).

---

[9] We assume that both Mansuri and Sowa were aware of Tan's EEOC charge when they reprimanded Tan. Conceding this issue to Tan does not change the outcome on this issue. *See supra* notes 3, 5.

Regardless, it is clear that, by itself, suspicious timing is not enough to establish the required causal link and thereby defeat a motion for summary judgment. In addition to suspicious timing, a plaintiff "must produce facts which somehow tie the adverse decision to [the plaintiff's] protected actions." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Because Tan has not produced such facts, we find that Tan has not established the required causal link. Accordingly, this Court grants Chicago's Motion for Summary Judgment on Tan's retaliation claim.

### III. **Conclusion**

This Court is mindful of the harsh effect of granting a motion to strike, but in certain circumstances it is warranted. In this case, there is a good deal of evidence in the record and Tan has not made even a colorable attempt to comply with Local Rule 56.1(b)(3). This Court is not unforgiving of mistakes in form. However, Tan gives us no reason to be forgiving.

With regard to Tan's discrimination and retaliation claims, this is certainly not a case that should go to a jury. The Seventh Circuit describes summary judgment as the "put up or shut up" moment of a lawsuit. *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A metaphysical doubt, however, is more than Tan has shown. Tan acknowledges the problems at the Jardine plant in areas for which he was accountable, but he does not even allege that someone else (or some metaphysical power) was responsible for any of the problems documented by Mansuri and Sowa.

This Court uses caution before taking a case away from a jury, but a party opposing summary judgement must present specific evidence to counter the motion. Tan has presented no specific evidence to counter the motion. His only argument is essentially "I didn't do it." If it has not been made clear by the voluminous case law on summary judgment, let it be clear now that "I didn't do it" is not enough to survive summary judgment under the facts presented here. Accordingly, Chicago's Motion for Summary Judgment is granted in its entirety.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** August 30, 2001.

Copies have been mailed to:

| | |
|---|---|
| JAMES P. POPP, Esq.<br>Witwer, Poltrock & Giampietro<br>125 South Wacker Drive<br>Suite 2700<br>Chicago, IL 60606 | MARA S. GEORGES<br>Corporation Counsel of the City of Chicago<br>SUSAN M. O'KEEFE<br>Assistant Corporation Counsel<br>30 North LaSalle Street<br>Suite 1020<br>Chicago, IL 60602 |
| Attorney for Plaintiff | Attorneys for Defendant |